JOURNAL ENTRY AND OPINION
Marcus T. Driggins ("appellant") appeals his convictions for two counts of possession of drugs in violation of R.C. 2925.11
and possession of criminal tools in violation of R.C. 2923.24
entered in Cuyahoga County Common Pleas Court after trial to the bench. We find no reversible error and affirm.
The facts giving rise to this appeal are as follows. Appellant was arrested on May 1, 1997. On July 21, 1997 the grand jury returned a three count indictment against him. Two counts alleged possession of drugs; to wit: heroin and crack cocaine in violation of R.C. 2925.11, each count with a firearm specification; and, the third count alleged possession of criminal tools in violation of R.C. 2923.24. Appellant entered a plea of not guilty to the charges against him.
On November 3, 1997, appellant moved the court to suppress the evidence against him. Hearing on the motion was held December 3, 1997. At the hearing, the State presented the testimony of Sgt. Timothy Gaertner of the Cleveland Police Department, who described the events surrounding the arrest and the search of appellant's apartment. Sgt. Gaertner testified that he effected appellant's arrest for violation of state drug law, he advised appellant of his rights and appellant articulated his understanding of his rights. When appellant was asked to provide a consent to search his house, he directed Sgt. Gaertner to obtain consent from Michelle Owens, his girlfriend with whom he lived. Sgt. Gaertner testified that when they arrived at the house with appellant, Ms. Owens was advised of her rights which she stated that she understood. As directed by appellant the police sought her consent to search the house. She was shown the consent to search form which was explained to her and she signed without threat or coercion.
On cross-examination, Sgt. Gaertner acknowledged that after the police knocked on the door, Ms. Owens invited them into the apartment. The police ascertained that she was a leaseholder on the apartment prior to explaining the consent to search form to her. Sgt. Gaertner advised Ms. Owens that she could refuse to consent, but told her that the police could get a search warrant. Sgt. Gaertner asserted that no one mentioned "child-endangering" or the "Metzenbaum Center." He said that once Ms. Owens signed the consent form, before the police conducted a systematic search of the apartment, appellant directed Ms. Owens to give the police his "silver box," a locked Sentry safe. Ms. Owens gave them the box and the key to the locked box which was found to contain about fifty packs of heroin, a couple bags of crack cocaine and some money. Sgt. Gaertner said that the police did not search the downstairs apartment. The State rested.
Appellant called Louis Farmer, the owner and downstairs occupant of the house in which appellant and Owens resided. Farmer testified that his apartment was broken into by the police and searched on May 1. He knew the police broke into his apartment because a detective left a card. Farmer identified the lease which appellant and Owens jointly held on the apartment.
Michelle Owens testified as to her version of the events surrounding the search of her apartment. She said that when she heard the police arrived, she looked downstairs and saw they had appellant and they were looking into the landlord's house. When she heard them come up the stairs, she opened her door. Once the police came in, they produced the consent to search form and asked whether she would sign it. Although the police did not have their weapons drawn, she felt threatened because they told her it would be "easier" to sign the consent to search form or she would be charged and her baby would be sent to Metzenbaum. She said the police told her that if she failed to sign the consent to search form they would stay and wait for a search warrant. She feared they would take her and the baby. She conceded that the police told her that she did not have to sign the form, and she admitted that she read and understood the consent to search but she only signed the form because she was afraid.
On cross-examination, Ms. Owens admitted that the police did not kick in her door. She did not remember whether the police advised of her Miranda rights. She admitted that after she signed the consent to search form, appellant directed her to give the "silver box" to the police and she gave the key to the Sentry box which contained the drugs and the money to the police. Ms. Owens conceded that she knew that the consent form was not a search warrant and the police did not force her to sign the consent; she just knew that if she did not sign the form they would be able to get a search warrant. However, she maintained that she only signed the consent to search form because the police threatened her with the baby.
Appellant's motion to suppress the evidence against him was denied by the court which found that the State presented clear and convincing evidence that the waiver of Fourth Amendment Rights was freely and intelligently given under the totality of the surrounding circumstances, to wit: Ms. Owens signed the form in three places; the testimony of Sgt. Gaertner was believable; and appellant directed Ms. Owens to give the "silver box" containing the evidence to the police prior to the search itself and she gave the key to the police so they could open it.
The next day, trial of appellant and co-defendant Humphrey commenced before the bench. Appellant renewed his motion to suppress the evidence which the court again denied. The State's first witness was Det. Mark Mazur, a nine-year veteran of the Narcotics Unit of the Cleveland Police Department, who testified that on May 1 he was assigned to conduct an undercover investigation of a suspected low level drug dealer. He followed her from her house to a parking lot where he observed a black male in a gray Chevrolet Cavalier pull up to her car. The suspected dealer exited her car, got into the Cavalier and transacted an exchange. He noted both the hand movements and the exchange of money. He followed her home and, subsequently, he joined the surveillance of the gray Cavalier. The Cavalier was followed to Beachwood Mall and, ultimately, to appellant's house on E. 169th Street. Thereafter, when appellant left the house on E. 169th Street, he drove the gray Cavalier to the Big Lots parking lot where he met up with the occupants of a black pick-up truck. The regular police, not the undercover team, were ordered to pick up the man in the black truck who was found to be in possession of heroin.
His surveillance of the Cavalier continued and the appellant met up with co-defendant Humphrey in the Sunoco parking lot. Each man got out of his car and was talking and shaking hands while standing by the pumps. He was directed to detain them both. He concentrated on the arrest of Humphrey while his partner, Det. Koozer, arrested appellant. While arresting Humphrey, Det. Mazur observed packets of heroin in plain view in the cupholder of Humphrey's car. Humphrey was causing difficulty in affixing the handcuffs, so he called for assistance. Appellant was placed under arrest and read his rights. Appellant provided the police with his address and they proceeded to 1193 E. 169th Street "up." The police were in possession of appellant's keys, but when they encountered Ms. Owens, she invited them into the apartment. Both he and Sgt. Gaertner explained the consent to search form to her. Det. Mazur was the inventory officer, thus, the "author" of the form. The police found fifty packets of heroin, two bags of hard crack cocaine, a gram scale, a .38 Colt with four live rounds, a plate, razor and $750 cash. Det. Mazur said a supervisor entered the downstairs apartment.
On cross-examination, Det. Mazur testified that appellant admitted ownership of the drugs found in the apartment to keep his girlfriend out of jail.
Next, Sgt. Timothy Gaertner, a ten-year veteran of the Cleveland Police Department, while serving with the Narcotics Unit was involved with the undercover operation of May 1 which consisted of following Mary Ferguson, a low level heroin dealer to effect a controlled buy. After Ferguson met with the man in the Cavalier, Sgt. Gaertner stayed with the Ferguson surveillance, but monitored the surveillance of the Cavalier by radio. In the second encounter which took place in the Big Lots parking lot, Ferguson was in the black pick-up truck and appellant was driving the Cavalier. When he stopped the black pick-up truck he discovered Ferguson and a companion with light blue packets of heroin. Then, Sgt. Gaertner met up with the other officers who were arresting appellant and Humphrey at the Sunoco station. Sgt. Gaertner advised appellant of his rights and explained the consent form to search his apartment. Appellant told him that Ms. Owens would have to sign the form. When the police went to the door of appellant's apartment and Sgt. Gaertner advised Ms. Owens who they were, she invited them inside. He explained her rights to her and explained the consent to search form. She signed the form. Then, appellant told Ms. Owens to give the "silver box" to the police, so she led them to the bedroom and showed them the Sentry safe and she handed him the key to the box. Inside the Sentry safe the police found money, unique light blue packets of heroin, and a scale. A plate, razor and gun were in a bedroom cabinet. The police did not arrest Ms. Owens as she had a small baby.
He said that the undercover operation was effected in the hope that Ferguson would lead them to her drug suppler. The plan called for the confidential informant to effect a controlled buy from her. The police knew she had to "trip," or go out, to get the drugs. First, they followed her to the parking lot at E. 158th Street and Lakeshore where the initial drug transaction with appellant in the Cavalier took place. At that point, appellant was pulled into the investigation. Appellant met Ferguson again when she was in the black pick-up truck with a companion.
Erica Walker of the Cleveland Police Forensic Laboratory, a scientific examiner and expert in drug analysis, testified that she determined the identity and the weight of both the cocaine and the heroin.
Finally, Det. James Koozer, a twelve-year veteran of the Cleveland Police Department assigned to the Narcotics Unit, testified he was also assigned to the surveillance on May 1. He followed Mary Ferguson to the parking lot at the Big Lots store where he observed her get into the gray Chevrolet Cavalier with appellant. He followed appellant to the Beachwood Mall where appellant, a female and a child went into the Mall. When they left the Mall, Det. Koozer followed them to their house. When appellant re-emerged, Det. Koozer followed him to Lakeshore where appellant again met up with Mary Ferguson. When Det. Koozer next saw appellant driving the Cavalier, he pulled into the Sunoco station at E. 156th Street and Lakeshore. Appellant exited his car and was talking and shaking hands with a man who arrived in a Buick. While monitoring the radio, Det. Koozer learned that Ferguson was "taken down" with someone in a truck and heroin was recovered. He was instructed to "take down," stop and detain, both appellant and Humphrey. He arrested appellant and advised him of his rights. He said that Det. Mazur saw the drugs in Humphrey's car. Both appellant and Humphey were handcuffed. After he wrote out the towing sheets for the cars and the truck, everyone went to appellant's house at 1139 E. 169th Street. He remained in the front of the house while the others entered the building and went upstairs.
The State rested its case, whereupon appellant moved for acquittal pursuant to Crim.R. 29, which was denied by the court. Appellant renewed his motion to suppress the evidence which was also denied by the court. The defense rested. The court found appellant guilty of possession of heroin, cocaine and criminal tools as charged. The court found appellant not guilty of each firearm specification. Appellant was sentenced to a term of imprisonment of twelve months on the charge of possession of heroin, three years on the charge of possession of crack cocaine and six months on the charge of possession of criminal tools, with the terms to run concurrently.
This delayed appeal follows, with leave of this court, in which appellant advances three assignments of error for our review.
 I. THE TRIAL COURT ERRED IN DENYING DEFENDANT/APPELLANT'S MOTION TO SUPPRESS.
 II. THE TRIAL COURT ERRED IN DENYING DEFENDANT/APPELLANT'S MOTION FOR ACQUITTAL WHERE THERE WAS INSUFFICIENT EVIDENCE TO SUSTAIN HIS CONVICTION AS A MATTER OF LAW AND CONSISTENT WITH THE DEFENDANT/APPELLANT'S RIGHT TO SUPPRESS THE "FRUITS OF THE POISONED TREE."
 III. DEFENDANT/APPELLANT IS ENTITLED TO NOT ONLY COUNSEL, BUT EFFECTIVE ASSISTANCE OF TRIAL COUNSEL, WHICH HE DID NOT RECEIVE BY THE ACTIONS TO HIS DETRIMENT OF HIS TRIAL ATTORNEY.
In his first assignment of error, appellant contends that the trial court erred in denying his motion to suppress the evidence against him asserting that his Fourth Amendment rights were violated because the police had no probable cause to arrest him and they conducted a warrantless search of his home without voluntary consent or a reasonable basis to enter his premises.
The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution secure the right to be free from unreasonable searches and seizures and require warrants to be particular and supported by probable cause. A warrantless search or seizure effected on premises in which an individual has a reasonable expectation of privacy is per se unreasonable unless it falls within one of the few recognized exceptions to the warrant requirement. Payton v. New York (1980).445 U.S. 573, 586-587, 63 L.Ed.2d 639. 100 S.Ct. 1371. When a warrantless search has been conducted, the state bears the burden of establishing that the search falls within one of the exceptions to the warrant requirement. Coolidge v. New Hampshire
(1971), 403 U.S. 443, 454-455, 29 L.Ed.2d 564, 91 S.Ct. 2022;State v. Kessler (1978), 53 Ohio St.2d 204, 207.
One of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to voluntary consent. Schneckloth v.Bustamonte (1973), 412 U.S. 218, 219, 36 L.Ed.2d 854,93 S.Ct. 2041. The voluntariness of consent is a question of fact to be determined from the totality of the circumstances, with the government having the burden of showing by "clear and positive" evidence that the consent was "freely and voluntarily" given.State v. Posey (1988), 40 Ohio St.3d 420, 427; State v. Danby
(1983) 11 Ohio App.3d 38; State v. Davis (1992), 80 Ohio App.3d 277.
When considering a motion to suppress, the trial court serves as a trier of fact and primary judge of the credibility of the witnesses and the weight of the evidence. State v. Fanning
(1982), 1 Ohio St.3d 19, 20; State v. Smith (1997), 80 Ohio St.3d 89,106. In reviewing an appeal from a motion to suppress evidence, the appellate court is bound to accept facts as found by the trial court if they are supported by competent credible evidence. State v. Williams (1993), 86 Ohio App.3d 37, 41. However, the application of the law to those facts is subject to review without deference to the trial court. State v. Anderson
(1995), 100 Ohio App.3d 688.
In this case, the uncontroverted evidence revealed that subsequent to appellant's arrest when he was confronted with the decision to consent to a search of his home, appellant directed the police to obtain consent from his girlfriend who resided in the home with him and their new baby. Ms. Owens understood her right to refuse consent but, nonetheless, gave written consent to the search of their home by signing the consent to search form in three places after she was read her Miranda rights, after the form was explained, and after she was advised her of her right to refuse. Appellant facilitated the search of his home by directing Ms. Owens to provide the police with the box which contained the drugs and the money before they systematically searched the house for other contraband. Ms. Owens voluntarily gave the key to the locked box to the police enabling them to open the box. Upon discovery of the drugs and the money, appellant admitted that the drugs were his.
Ms. Owens said that she only signed the form because of feeling threatened, but she admitted that she knew it was not a search warrant, she read the form and she understood that she could refuse to sign it. Thus, even were we to believe that Ms. Owens felt threatened because her baby might go to Metzenbaum if she refused to sign the voluntary consent to search form, such a threat does not qualify as "coercion" such as to vitiate her signature where the record is clear that she understood her right to refuse and yet chose to consent to the search. See State v.Davis, supra, 289.
From the record before us, we find that the facts as found by the trial court in its denial of appellant's motion to suppress are supported by competent credible evidence. Based on the totality of the evidence, the state presented clear and convincing evidence to show that a free and voluntary waiver of the Fourth Amendment privilege against unreasonable search and seizure was given by Ms. Owens when she executed the consent to search form. Appellant's first assigned error is without merit.
In his second assigned error, appellant contends that the trial court erred in denying his motion for acquittal where insufficient evidence was presented to demonstrate that appellant possessed, had dominion or control over the drugs contained in the safe.
Crim.R. 29 (A) provides, in pertinent part:
 The court on motion of a defendant * * * shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment * * * if the evidence is insufficient to sustain a conviction of such offense or offenses.
A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the state has met its burden of production at trial. State v. Thompkins (1997),78 Ohio St.3d 380, 390. On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
R.C. 2925.11 prohibits the knowing possession of a controlled substance. R.C. 2923.24 prohibits the possession of criminal tools. R.C. 2925.11, Ohio's drug possession statute, provides in pertinent part:
 (A) No person shall knowingly obtain, possess, or use a controlled substance.
R.C. 2925.01 (K) defines possession as follows:
 "Possess" or "possession" means having control over a thing or substance, but may not be inferred solely from mere access to a thing or substance through ownership or occupation of the premises upon which the thing or substance is found.
In this case, appellant was convicted of possession of both crack cocaine and heroin. Further, appellant was convicted of possession of criminal tools intended for use in the commission of a felony, to wit: money, a 1982 Chevrolet Cavalier and a safe.
Possession may be actual or constructive. State v. Haynes
(1971), 25 Ohio St.2d 264. Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within his immediate possession.State v. Woley (1976), 46 Ohio St.2d 316, 332, 348; see State v.Shine (Apr. 29, 1999), Cuyahoga App. No. 74053, unreported. Knowledge of illegal goods on one's property is sufficient to show constructive possession. State v. Hankerson (1982), 70 Ohio St.2d 87,91; State v. Young (Jan. 24, 1991), Cuyahoga App. No. 57952, unreported.
In this case, evidence was presented to show that heroin, crack cocaine, and money were found in appellant's home, in his Sentry security box. Ms. Owens testified that the box belonged to appellant. It was uncontroverted that appellant directed Ms. Owens to give his box to the police and she gave the police the key to open the box. Testimony revealed that appellant admitted that the drugs in the box were his. Further, the police officer testified that he observed appellant and Mary Ferguson transact a drug sale while in the Chevrolet Cavalier.
Construing the evidence in a light most favorable to the prosecution, as we are required to do, we conclude that there was sufficient evidence from which a reasonable mind could find that appellant exercised dominion and control over the drugs and the criminal tools. Probative evidence was directed to each element of those crimes. That evidence, if believed by the jury, was sufficient to establish appellant's guilt beyond a reasonable doubt. Accordingly, the record demonstrates evidence sufficient to support a conviction for possession of heroin, crack cocaine and criminal tools. Appellant's second assignment of error is without merit.
Finally, in his third assignment of error, appellant complains that trial counsel was so ineffective that, but for the ineffective defense which he received, the results of his trial would have been different. Specifically, appellant contends trial counsel failed to request discovery and a bill of particulars, failed to present defense witnesses, represented both defendants where a substantial conflict existed, and waived appellant's right to trial by jury.
The standards governing claims of ineffective assistance of counsel under the federal and Ohio constitutions are well established and essentially the same. Strickland v. Washington
(1984) 466 U.S. 668, 180 L.Ed.2d 674, 104 S.Ct. 2052; State v.Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus.
The Supreme Court of Ohio, with regard to the issue of ineffective assistance of counsel, held in State v. Bradley,supra:
 "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness. State v. Lytle (1976), 48 Ohio St.2d 391, 396-397, 2 Ohio Op.3d 495, 498, 358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910. This standard is essentially the same as the one enunciated by the United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052.
* * *
 Even assuming that counsel's performance was ineffective, this is not sufficient to warrant reversal of a conviction. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. United States v. Morrison, 449 U.S. 361, 364-365, 66 L.Ed.2d 564, 101 S.Ct. 665 (1981).' Strickland, supra, at 691. To warrant reversal, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' Strickland, supra, at 694. In adopting this standard, it is important to note that the court specifically rejected lesser standards for demonstrating prejudice.
* * *
 Accordingly, to show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different.
It is well-settled that a properly licensed attorney is presumed competent. Vaughn v. Maxwell (1965), 2 Ohio St.2d 299. Moreover, a reviewing court will not second guess what could be a matter of trial strategy. State v. Smith (1985), 17 Ohio St.3d 98. With these legal standards in mind, we review the claims asserted by appellant.
First, appellant complains that counsel failed to request a bill of particulars or file a motion requesting discovery. The record demonstrates that the indictment sets forth with specificity the charges brought against appellant. The record further reveals that no surprise statements or witnesses were introduced at trial, thus, appellant has failed to demonstrate prejudice to his case by counsel's failure to request a bill of particulars or for discovery.
Second, appellant complains that counsel failed to call witnesses to testify as to his character. Decisions regarding the calling of witness are within the purview of defense counsel's trial tactics. State v. Coulter (1992), 75 Ohio App.3d 219; Statev. Oliver (1995), 101 Ohio App.3d 587. If counsel's performance bears a reasonable relationship to legitimate trial strategy, this court need not examine whether appellant has been prejudiced. State v. Walters (Jan. 18, 1996), Cuyahoga App. No. 68279, unreported.
Third, appellant complains that counsel had a potential conflict of interest because he represented both appellant and his co-defendant at trial and failed to request separate trials.
Pursuant to R.C. 2945.13, multiple defendants charged in the same indictment shall be tried jointly. This section states:
 When two or more persons are jointly indicted for a felony, except a capital offense, they shall be tried jointly unless the court, for good cause shown on application therefore by the prosecuting attorney or one or more of said defendants, orders one or more of said defendants to be tried separately.
Joinder of defendants is the rule rather than the exception and the burden is on the defendant to establish any resulting prejudice. State v. Potter, (Apr. 16, 1998), Cuyahoga App. No. 72015, unreported. Pursuant to R.C. 2945.13, two jointly indicted persons shall be tried together unless the prosecutor or one of the defendants applies for separate trials and shows good cause. The burden of establishing good cause is on the defendant requesting a separate trial and the granting or denial of such separate trial request rests within the sound discretion of the trial court. State v. Dingus (1970), 26 Ohio App.2d 131; State v.Perod (1968), 15 Ohio App.2d 115. Regarding the failure to file a motion to sever, joinder of defendants is proper as long as "all defendants participated in the same series of transactions leading to the charges," even if they did not participate in every act and were not all charged in each count of the indictment. State v. Schiebel (1990), 55 Ohio St.3d 71, 88-89.
Without more, after a review of the record, we are not convinced that trial counsel erred by failing to file a motion for severance. Moreover, appellant has failed to demonstrate that he suffered any prejudice as a result of the joint trial.
Finally, appellant complains that counsel waived his right to a jury trial in the interest of saving time because counsel had caused "some delay."
R.C. 2945.05 establishes the process that must be satisfied for a criminal defendant to properly waive his right to a jury. A defendant must sign a written waiver showing that he knowingly and voluntarily waived his right to trial by jury and the waiver shall be filed and made part of the record. Such waiver must be "made in open court." In this case, the trial record contains a time-stamped waiver form signed by appellant and filed with the trial court. Further, the record reflects that in open court the trial judge and the defendant held a colloquy that was "extensive enough for the trial judge to make a reasonable determination that the defendant has been advised and is aware of the implications of voluntarily relinquishing a constitutional right." See State v. Walker (1993), 90 Ohio App.3d 352, 358.
The following colloquy was held between the court and appellant:
 THE COURT: Mr. Driggins, I'm going to ask you the same question. This is your signature on the jury waiver form; correct?
MR. DRIGGINS: Yes, your honor.
 THE COURT: Prior to putting your signature on this form, you discussed your constitutional right with your attorney and you are fully aware of the fact that you have a right, absolute right, to have this case tried before a jury, or you may waive a jury and have this case tried by a judge of this Court. You understand that?
MR. DRIGGINS: Yes.
 THE COURT: After discussing it with your attorney and considering your Constitutional rights, you freely and voluntarily waive your right to a trial by a jury and want this case to go forward before the court, in this case myself; is that correct?
MR. DRIGGINS: Yes, sir.
 THE COURT: Do you have any questions whatsoever about the waiver of jury trial that you requested this court to accept?
MR. DRIGGINS: No, sir.
THE COURT: All right.
 The Court then will find that both defendants, having been fully advised of their Constitutional rights to trial by jury, fully and completely understand them, and the Court will accept the waiver of the jury trial in this case and proceed to try this case to the court tomorrow morning.
Thus, the record clearly demonstrates that appellant knowingly and voluntarily waived his right to a trial by jury, he signed the form in open court, which was duly filed and an extensive colloquy was conducted with the court sufficient to demonstrate his understanding of his rights and the waiver of the right to a trial by jury.
Appellant having failed to show his counsel's performance fell below the standard and, that, but for such failures the outcome of his trial would have been different, we find his third assignment of error to be without merit.
Judgment affirmed.
It is ordered that appellee recover from appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, J. and PATRICIA A. BLACKMON, J.,CONCUR.
 __________________________ TIMOTHY E. McMONAGLE PRESIDING JUDGE