JOURNAL ENTRY and OPINION
{¶ 1} Appellant Angel Torres appeals his convictions for three counts of aggravated murder, one count of murder, two counts of aggravated robbery, and four counts of aggravated burglary. He assigns eight errors for our review.[1]
 {¶ 2} Having reviewed the record and pertinent law, we affirm Torres' convictions. The apposite facts follow.
 {¶ 3} The Cuyahoga County Grand Jury indicted Torres for four counts of aggravated murder, with specifications for mass murder and felony murder, four counts of aggravated robbery, and four counts of aggravated burglary.[2] Torres entered a plea of not guilty and the matter proceeded to a jury trial.
 {¶ 4} Cleveland Police Officer Eric Tammisaar found the bodies of Zaida Rosa, Torres' mother, and her sister-in-law, Angelica Nieves, in Zaida Rosa's home, victims of an apparent homicide. Both women had been stabbed repeatedly. The officer noted the lack of any evidence of a forced entry and the locked doors. The rooms in the house were intact, except Zaida Rosa's room. The officer observed that the deadbolt lock had been forced open. A box of Zaida Rosa's personal checks was on the floor between the bed and dresser. Otherwise, the remaining items were in place; however, the photograph of Zaida Rosa's husband and Torres' father was faced down on the entertainment center.
 {¶ 5} In the basement, the officer observed forced entry into the storage room. The items contained therein were neatly arranged except one empty space, which to the officer appeared that something had been removed.
 {¶ 6} After further investigation and speaking with other family members, the officer learned that Torres' father had committed suicide after he had been charged with raping his eleven year-old granddaughter and the accusation from his daughter, Maribel Torres, that he had raped her when she was a child. The officer was told that Torres had resided with his mother until June 4, 2003, and that he had stolen her checks and written fraudulent checks to Wilson Bastita, totaling $10,000.
 {¶ 7} Maribel Torres informed the police that Torres had been calling her asking for money and she last saw him on August 7, 2003. The last communication with Rosa was initiated by her son on August 10th. Her body was found on August 13, 2003. Maribel Torres told the police that Torres was angry with his mother and that he was very violent.
 {¶ 8} Torres was arrested, taken to the police station, and "mirandized." Ultimately, Detective Kovach interviewed him about the murders. He denied the murders and surmised that someone broke into the house and killed the victims for money. The detective responded that no one would believe that a burglar would break into the house and then lock the doors upon leaving.
 {¶ 9} Torres than confessed to the detective. He stated he went with his girlfriend, Susan Zicarelli, to his mother's house on Monday, August 11. They went there to pick up the rest of his belongings. The girlfriend waited in the car. While inside, he blacked out while speaking to his mother. He claimed he had become upset after thinking about how his father had raped his sister and niece, how his mother was blaming the sister for telling the police, and how his mother would not give him any money. He also blamed his mother for not stopping the father from molesting his sister when she was young. He stated, "things just boiled up." He did not want to kill his aunt but did because she "was there." He stated after he killed his mother and his aunt, he went back to the car and left. He said he returned to the house on Tuesday, because it felt like a dream; he thought everybody would be okay.
 {¶ 10} Torres' statement was reduced to writing. However, after the detective typed the statement, Torres refused to sign it until he communicated with his attorney. Torres than wrote the word, "Gangey" in the upper right hand corner, so that he would know that the statement was his.
 {¶ 11} Although no blood was found on the clothing retrieved from Susan Zicarelli's house, a drop of blood matching Zaida Rosa's DNA was found on a pair of Torres' tennis shoes. No fingerprints were discovered from the alleged weapons.
 {¶ 12} After Torres was arrested, Susan Zicarelli was questioned. She told officers that she and Torres had gone to his mother's house on August 11 between 11:00 a.m. and 2:00 p.m. She stated she waited in the car for a half-hour. She was angry because it was hot. She became impatient and knocked on the door and rang the doorbell, but no one responded. Torres then finally exited the house with a box of car detailing equipment and several hundred dollars in cash.
 {¶ 13} At his trial, several inmates testified against Torres. Eddie Farrell testified that Torres told him he killed his mother and aunt after getting into an argument with his mother. He told Farrell he blacked out and left a pair of scissors imbedded in his mother. He also told him that Susan Zicarelli disposed of the clothing he wore on the date of the murders.
 {¶ 14} Fabian DeJesus testified he and Torres knew each other from the neighborhood and became friends while in jail. Torres told DeJesus he got into an argument with his mother. His aunt tried to intervene. He tied the women up and then started stabbing his mother with scissors. After killing his mother, he killed his aunt. He told DeJesus that he was initially going to take some checks, but left them because he did not want the murders linked to him. He believed the fact he stole checks before would implicate him. He told DeJesus he burned the clothes that he wore during the murders.
 {¶ 15} The jury found Torres guilty of two counts of aggravated murder regarding Zaida Rosa, along with the mass murder and felony-murder specifications. The jury found Torres guilty of aggravated murder of Angela Nieves with the mass murder specification, but not guilty of the felony-murder specification. Torres was found not guilty of the second count of aggravated murder against Angela Nieves, but the jury found he was guilty of the lesser included offense of murder. The jury found Torres guilty of two counts of aggravated robbery against Zaida Rosa, but not guilty of the two counts of aggravated robbery against Angela Nieves. He was found guilty of all four counts of aggravated burglary.
 {¶ 16} After the conclusion of the penalty phase of the trial, the jury rejected the death penalty as punishment. The trial court sentenced Torres to life in prison.
 Motion to Suppress {¶ 17} In his first assigned error, Torres argues that his statements to the police should have been suppressed because they were obtained without probable cause and without an arrest warrant. We disagree.
 {¶ 18} The Fourth Amendment to the United States Constitution provides that people are "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, * * * and no Warrants shall issue, but upon probable cause * * *."[3] The test for establishing probable cause to arrest without a warrant is whether the facts and circumstances within an officer's knowledge were sufficient to warrant a prudent individual in believing that the defendant had committed or was committing an offense.[4] In making this determination, we examine the totality of the facts and circumstances.[5] As the United States Supreme Court in Maryland v. Pringle[6]
stated:
"`[P]robable cause is a fluid concept — turning on the assessment of probabilities in particular factual con-texts — not readily, or even usefully, reduced to a neat set of legal rules.'Gates, 462 U.S., at 232, 76 L.Ed.2d 527, 103 S.Ct. 2317.
"The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances. See ibid.; Brinegar, 338 U.S. at 175, 93 L.Ed. 1879,69 S.Ct. 1302. We have stated, however, that `[t]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt,' ibid. (internal quotation marks and citations omitted), and that the belief of guilt must be particularized with respect to the person to be searched or seized, Ybarra v.Illinois, 444 U.S. 85, 91, 62 L.Ed.2d 238, 100 S.Ct. 338
(1979)."[7]
 {¶ 19} In the instant case, multiple factors created probable cause to arrest Torres. No signs of a forced entry existed, and all the doors were locked, indicating the murderer possessed a key to the house and locked the doors as he left. The house was not ransacked, suggesting the killer was familiar with the house. Officers were informed by Torres' siblings that Torres had lived at the home until shortly before the murders. Both Torres' brother and sister strongly believed that Torres was involved in the murders. They both also suspected Torres was into drugs again and needed drug money.
 {¶ 20} Torres' brother informed the police that Torres had previously stolen checks from his mother and illegally cashed them. The only item out of place at the home was the mother's box of checks. The mother had filed a complaint against Torres regarding his theft of her checks. She also had refused to give Torres any more financial assistance.
 {¶ 21} Torres' sister informed the police that Torres was verbally abusive to their mother in the past and had a violent nature. Torres had been calling his sister begging for money. Torres told her he was going to rob somebody in order to get the money he needed. According to his sister, Torres was angry with their mother because she would not give him any money. He planned on suing their mother for $10,000, which he had previously given to her to use as a down payment on the house.
 {¶ 22} All of these facts were known to the officers prior to making the decision to arrest Torres. A police officer may draw inferences based on his own experience in deciding whether probable cause exists.[8] These above facts support probable cause that Torres was not only a suspect, but probably the murderer.
 {¶ 23} Although Torres argues the United States Supreme Court case of Kaupp v. Texas[9] controls the instant case, we conclude that it is distinguishable. The Court in Kaupp stated:
"The detectives did not seek a conventional arrest warrant, as they did not believe they had probable cause for Kaupp's arrest. See ibid. As the trial court later explained, the detectives had no evidence or motive to corroborate the brother's allegations of Kaupp's involvement."[10]
 {¶ 24} In the instant case, Torres' brother and sister strongly suspected Torres was involved in the murders. Their suspicion was corroborated by the fact the house was not ransacked, was not broken into, and the killer locked the doors as he left. Family members also told officers that Torres' relationship with his mother was strained. Motive was established by the statement of the sister that Torres appeared desperate for money and his mother had recently refused to give him any more financial assistance. Unlike Kaupp, motive was established. Additionally, Torres had access and knowledge of the house; consequently, motive and opportunity served as a basis for probable cause to arrest him.
 {¶ 25} During oral argument, Torres' attorney argued that pursuant to the United States Supreme Court's decision in Paytonv. New York,[11] removing a person from his residence without a warrant, is per se unreasonable unless exigent circumstances existed. However, Payton does not apply where the entry into the home is made with the consent of the occupant.[12] At the suppression hearing, Officer Tammisaar testified that a female answered the door and gave the officers permission to enter the home. The daughter of Torres' girlfriend testified that she answered the door, and the officers walked in without permission. At a hearing on a motion to suppress, however, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility.[13] We, therefore, defer to the trial court.
 {¶ 26} Assuming merely for purposes of discussion that the officers did not have consent and entered the house without a warrant in violation of Payton, Torres' written confession is not suppressible under the fruit of the poisonous tree doctrine. Ten years after Payton, the U.S. Supreme Court in New York v.Harris,[14] held when the officers have probable cause prior to entering a house, the exclusionary rule would not prevent the prosecution's use of a statement made by a defendant outside his home at the police station. The Court held:
"Nothing in the reasoning of that case [Payton v. New York] suggests that an arrest in a home without a warrant but with probable cause somehow renders unlawful continued custody of the suspect once he is removed from the house. There could be no valid claim here that Harris was immune from prosecution because his person was the fruit of an illegal arrest. United States v.Crews, 445 U.S. 463, 474 (1980). Nor is there any claim that the warrantless arrest required the police to release Harris or that Harris could not be immediately rearrested if momentarily released. Because the officers had probable cause to arrest Harris for a crime, Harris was not unlawfully in custody when he was removed to the station house, given Miranda warnings, and allowed to talk. For Fourth Amendment purposes, the legal issue is the same as it would be had the police arrested Harris on his doorstep, illegally entered his home to search for evidence, and later interrogated Harris at the station house. Similarly, if the police had made a warrantless entry into Harris' home, not found him there, but arrested him on the street when he returned, a later statement made by him after proper warnings would no doubt be admissible.
 {¶ 27} In the instant case, the officers had probable cause to arrest Torres prior to entering the home. This is not a situation where evidence found in the home established the probable cause. Consequently, the officers' continued custody over Torres was not illegal. Accordingly, Torres' first assigned error is overruled.
 Cross-examination of Detective Kovach {¶ 28} In his second assigned error, Torres claims the trial court erred by restricting his cross-examination of Detective Kovach. Torres' counsel attempted to impeach Detective Kovach's testimony with an unrelated case involving Detective Kovach. In the unrelated case, the defendant recanted his confession.
 {¶ 29} Trial courts have broad discretion in determining the relevance or irrelevance of evidence.[15] We conclude the trial court did not abuse its discretion by not permitting evidence of the unrelated case. In the other case, the defendant confessed to committing the crime. Later, another inmate confessed to committing the same crime, causing the first defendant to recant. However, in this matter, Torres claimed he never confessed. More importantly, he does not argue that Detective Kovach committed any act or procedure that was illegal or improper. Accordingly, Torres' second assigned error is overruled.
 Deficiency in Indictment/Jury Instructions and Verdict {¶ 30} Assigned errors three and five will be addressed together as they concern Torres' allegation that deficiencies existed in his indictment on the felony-murder counts. Torres contends the indictment for these counts did not contain the essential elements of the principle charges underlying the felony-murder counts, which are, aggravated robbery and aggravated burglary.[16] He argues this deficiency in the indictment, and the trial court's related jury instructions and failure to provide jury verdict forms for each underlying offense, permitted the jury to convict him for felony murder based on a less than unanimous verdict because some of the jurors may have found him guilty under aggravated robbery, while others may have found him guilty under aggravated burglary. We disagree.
 {¶ 31} The Ohio Supreme Court addressed this identical situation in State v. Noling.[17] In Noling, the defendant was convicted of two counts of aggravated murder, two counts of aggravated robbery and one count of aggravated burglary. The Court held the outcome would not have been different if the indictment had been worded otherwise because the defendant was separately convicted of both aggravated burglary and aggravated robbery. Therefore, the jury found the elements for both crimes were present.
 {¶ 32} Likewise, in the instant case, because the jury found Torres guilty of both aggravated robbery and aggravated burglary, no prejudice resulted. Accordingly, Torres' third and fifth assigned errors are overruled.
 Excluding Testimony of Dr. Richard Offshe {¶ 33} In his fourth assigned error, Torres claims the trial court erred by excluding the testimony of interrogation expert, Dr. Richard Ofshe. The trial court excluded Dr. Ofshe's testimony based on the fact his opinion was irrelevant to the facts of the case. We agree.
 {¶ 34} Dr. Ofshe specializes in determining the voluntariness of a confession. However, in the instant case, Torres did not claim his confession was involuntary, but claims he never gave a confession and that the detective fabricated his confession. Therefore, Dr. Ofshe's testimony as to whether the confession was voluntary was irrelevant. In fact, Dr. Ofshe even stated he had never previously testified whether a confession was fabricated by a detective.
 {¶ 35} As we stated, the trial court has broad discretion in determining the exclusion of irrelevant evidence. We conclude the trial court did not abuse its discretion in the instant case. Accordingly, Torres' fourth assigned error is overruled.
 Ineffective Assistance of Counsel {¶ 36} In his sixth assigned error, Torres argues he did not receive effective assistance of counsel because counsel failed to object to the jury instructions, failed to object to the indictment, and failed to request a continuance so that Marie Cornielas could testify on Torres' behalf. We disagree.
 {¶ 37} We review a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v.Washington.[18] Under Strickland, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance.[19] To show prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the result of the proceedings would have been different.[20] Judicial scrutiny of a lawyer's performance must be highly deferential.[21]
 {¶ 38} Torres contends his counsel was ineffective for failing to object to the trial court's failure to instruct the jury on the underlying elements of aggravated robbery and aggravated burglary of the felony-murder counts. As we concluded in the fourth assigned error, the trial court's failure to instruct on the elements did not result in prejudicial error. Therefore, counsel was not ineffective for failing to object.
 {¶ 39} Torres contends counsel was ineffective for failing to request the term "mass murder" be stricken from the indictment and for failing to object to the trial court's use of the term when instructing the jury. The specification set forth in R.C.2929.04(A)(5) has been variously referred to as a "mass murder" specification; a "multiple murder" specification; and "a course of conduct" specification.[22] While the term "mass murder" is not found in the statute, the Committee Comment to R.C.2929.04(A)(5) states that one of the aggravating circumstances justifying the imposition of the death penalty is "mass murder."
 {¶ 40} Regardless of what the R.C. 2929.04(A)(5) specification is called, the use of the term "mass murder" under the circumstances cannot rise to the level of prejudicial error. "Mass murder" arguably suggests the killing of more than one person, a fact that indisputably occurred in this case. We also cannot conclude the jury found Torres guilty of two counts of murder solely because the trial court used the term and the indictment labeled the aggravated murder specification as "mass murder."
 {¶ 41} Finally, Torres claims counsel was ineffective for failing to request a continuance to allow Marie Cornielas to testify. Cornielas claims to have seen the victims alive on Monday evening, which conflicts with the State's assertion that the victims were murdered earlier in the day. The substance of Cornielas' testimony was testified to by Detective Gajowski when he related that Cornielas told him that she had last seen the victims on Monday evening. Dr. Richard Bux, who testified on behalf of the defense, also stated one of his considerations in determining the time of death was the fact Marie Cornielas contended she saw the victims alive on Monday around 6:00 p.m.
 {¶ 42} Therefore, because the jury was well aware of the fact Cornielas stated that she saw the victims alive on Monday evening, no prejudice resulted from Cornielas not testifying. Accordingly, Torres' sixth assigned error is overruled.
 Insufficient Evidence of Prior Calculation and Design {¶ 43} In his seventh assigned error, Torres argues that there was insufficient evidence presented that he committed the murders with prior calculation and design. Torres points to the fact that in his confession, he states he "didn't really mean to hurt my aunt, but she was just there," and, "I did not plan on this happening, it just happened while talking to my mother." The jail house informants also testified that Torres claimed he did not plan the murders.
 {¶ 44} The standard of review with regard to the sufficiency of evidence is set forth in State v. Bridgeman:[23]
"Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."[24]
 {¶ 45} Bridgeman must be interpreted in light of the sufficiency test outlined in State v. Jenks,[25] in which the Ohio Supreme Court held:
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)"
 {¶ 46} Prior calculation and design requires something more than instantaneous deliberation.[26] However, prior calculation and design can be found even when the killer quickly conceived and executed the plan to kill "within a few minutes."[27] It is not required that a prolonged thought process be present. There is no bright line test to determine whether prior calculation and design are present, rather each case must be decided on a case-by-case basis.[28]
 {¶ 47} While Torres argues that the State failed to prove that this was anything more than an argument that turned violent, we conclude the jury could find prior calculation and design, necessary for an aggravated murder conviction, based on the protracted nature of the murders.[29] Three different weapons were used in committing the murders: a kitchen knife, sewing scissors, and an iron. This indicates some foresight in killing the victims. Rosa suffered a total of thirty-seven stab wounds, along with blunt force trauma to the head, and a fractured skull. Nieves suffered a total of twenty-one stab wounds, blunt force trauma, and a fractured jaw. Dr. Bux, who testified on behalf of the defense, estimated the assault took five-to-ten minutes.
 {¶ 48} The evidence also indicates that Torres was in desperate need of money. For several months, he stole and forged checks that were his mother's. His mother recently refused to give him any more financial help. Torres, therefore, had a motive to kill his mother in order to obtain money. He took cash, and other belongings, which he later tried to sell. Thus, based on the protracted nature of the murders, the use of several weapons, the fact there were two victims, and Torres' motive to kill to obtain money, we conclude, there was sufficient evidence presented of prior calculation and design. Accordingly, Torres' seventh assigned error is overruled.
 Penalty Phase {¶ 49} In his eighth assigned error, Torres contends the trial court erred by not permitting Marie Cornielas to testify as to residual doubt during the penalty phase.
 {¶ 50} The Ohio Supreme Court in Ohio v. McGuire[30]
held that residual doubt is not an acceptable mitigating factor under R.C. 2929.04(B), because it is irrelevant to the issue of whether the defendant should be sentenced to death. Torres claims that the Court's holding in McGuire is unconstitutional. We disagree.
 {¶ 51} While this appeal was pending, the United States Supreme Court in Oregon v. Guzek[31] addressed whether the states can exclude residual doubt evidence during the penalty phase of a capital case. The Court held:
"The Constitution does not prohibit a State from limiting the innocence-related evidence a capital defendant can introduce at a sentencing proceeding to the evidence introduced at the original trial. This Court's cases have not interpreted theEighth Amendment as providing such a defendant the right to introduce at sentencing evidence designed to cast `residual doubt' on his guilt of the basic crime of conviction. Franklin v. Lynaugh,487 U.S. 164, 173, n. 6, 108 S.Ct. 2320, 101 L.Ed.2d 155
(plurality opinion). Lockett v. Ohio, supra, 438 U.S. 586,98 S.Ct. 2954, 57 L.Ed.2d 973, and Green v. Georgia, supra,442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738, distinguished. Even if such a right existed, it could not extend so far as to provide Guzek with a right to introduce the evidence at issue. TheEighth Amendment insists upon `reliability in the determination that death is the appropriate punishment in a specific case, `Penryv. Lynaugh, 492 U.S. 302, 328, 109 S.Ct. 2934, 106 L.Ed.2d 256, and that a sentencing jury be able `to consider and give effect to mitigating evidence' about the defendant's `character or record or the circumstances of the offense,' id., at 327-328,109 S.Ct. 2934, 106 L.Ed.2d 256, but it does not deprive the State of its authority to set reasonable limits on the evidence a defendant can submit, and to control the manner in which it is submitted."[32]
 {¶ 52} The United States Supreme Court has found capital defendants do not have a constitutional right to present residual doubt evidence during the penalty phase. Therefore, the Ohio Supreme Court's holding in McGuire is constitutional. Thus, the trial court did not err by excluding residual doubt testimony from Marie Cornielas during the penalty phase of the trial. Accordingly, Torres' eighth assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr. P.J., and MCMonagle, J., concur.
 APPENDIX Assignments of Error
"I. The trial judge erred in overruling a defense motion to suppress statements obtained as the result of an improper warrantless arrest of the appellant in his residence."
"II. The trial court erred by unduly restricting the defense cross-examination of Detective Denise Kovach."
"III. The court erred by failing to dismiss counts three and four, aggravated murder pursuant to R.C. 2903.01(B) on the basis of a void or voidable indictment."
"IV. The trial court denied the appellant his right of compulsory process and right to present a defense by precluding the testimony of Dr. Richard Ofshe."
"V. The trial court's erroneous culpability phase jury instructions denied the appellant his federal due process rights to a fair trial."
"VI. The failure to object to erroneous culpability phase jury instructions denied the appellant his right to effective assistance of counsel."
"VII. The evidence is insufficient to sustain a conviction for the element of prior calculation and design."
"VIII. The trial court erred by precluding the testimony of a defense witness to testify in the penalty phase of trial because the testimony related to the issue of residual doubt and by refusing to instruct the jury that it could consider such as mitigation."
[1] See Appendix.
[2] The Grand Jury also indicted Torres on one count each for theft, forgery, and uttering. However, because these counts arose out of Torres' theft and subsequent forgery of Zaida Rosa's checks approximately one month prior to the murders, they were severed and tried to the bench after the trial concluded. The trial court found Torres guilty of these remaining counts.
[3] Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 225,13 L.Ed.2d 142.
[4] Id.
[5] State v. Homan, 89 Ohio St.3d 421, 427, 2000-Ohio-212.
[6] (2003), 540 U.S. 366, 124 S.Ct. 795, 157 L.Ed.2d 769.
[7] Id. at 371.
[8] See, e.g., United States v. Ortiz (1975), 422 U.S. 891,897, 95 S.Ct. 2585, 2589, 45 L.Ed.2d 623.
[9] (2003), 538 U.S. 626, 123 S.Ct. 1842, 155 L.Ed.2d 814.
[10] Id. at 628.
[11] (1980), 445 U.S. 573.
[12] New York v. Harris (1990), 494 U.S. 14; State v.Thompson (1987), 33 Ohio St.3d 1, 19; State v. Gibson,164 Ohio App.3d 558, 2005-Ohio-6380; State v. Palinkas, Cuyahoga App. No. 86247, 2006-Ohio-2083 at ¶ 8.
[13] State v. Mills (1992), 62 Ohio St.3d 357; State v.Curry (1994), 95 Ohio App.3d 93.
[14] (1990), 495 U.S. 14.
[15] State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus; State v. Hymore (1967), 9 Ohio St.2d 122,128.
[16] We note the jury found Torres not guilty of felony murder as to count four. Therefore, Torres' argument as applies to this count is moot.
[17] 98 Ohio St.3d 44, 2002-Ohio-7044.
[18] (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052.
[19] State v. Bradley (1989), 42 Ohio St.3d 136, paragraph one of syllabus.
[20] Id. at paragraph two of syllabus.
[21] State v. Sallie (1998), 81 Ohio St.3d 673, 674.
[22] State v. Gregley (Dec. 16, 1999), Cuyahoga App. No. 75032.
[23] (1978), 55 Ohio St.2d 261, syllabus.
[24] See, also, State v. Apanovitch (1987), 33 Ohio St.3d 19,23; State v. Davis (1988), 49 Ohio App.3d 109, 113.
[25] (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
[26] State v. Cotton (1978), 56 Ohio St.2d 8, paragraph two of the syllabus.
[27] State v. Coley, 93 Ohio St.3d 253, 264, 2001-Ohio-1340, citing State v. Palmer, 80 Ohio St.3d 543, 567-568, 1997-Ohio-312.
[28] State v. Taylor, 78 Ohio St.3d 15, 1997-Ohio-243; Legislative Service Commission Comment to R.C. 2903.01.
[29] State v. Allen, 73 Ohio St.3d 626, 1995-Ohio-283.
[30] (1997), 80 Ohio St.3d 390.
[31] (2006), ___ U.S. ___, 126 S.Ct. 1226, 163 L.Ed.2d 1112.
[32] Id. at syllabus, paragraph two.