The **STATE** of Ohio, Appellee,

v.

**TORRES**, Appellant.

[Cite as *State v. Torres,* 174 Ohio App.3d 168, 2007-Ohio-6651.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 89304.

Decided Dec. 13, 2007.

William D. Mason, Cuyahoga County Prosecuting Attorney, and Matthew E. Meyer, Assistant Prosecuting Attorney, for appellee.

Richard Agopian and Summers & Vargas Co., LPA, and William L. Summers, for appellant.

JAMES J. SWEENEY, Presiding Judge.

{¶ 1} Defendant-appellant, Angel Torres, appeals the decision of the trial court. Having reviewed the arguments of the parties and the pertinent law, we hereby reverse and remand this case to the lower court for a hearing.

I

{¶ 2} Appellant was indicted on August 26, 2003, on four counts of aggravated murder, with specifications for mass murder and felony murder, four counts of aggravated robbery, and four counts of aggravated burglary.[1] Appellant entered a plea of not guilty, and the matter proceeded to a jury trial.

{¶ 3} Counsel was appointed and later filed a motion to dismiss counts three and four based on defects in the indictment. The trial court denied the motion on December 9, 2004. Trial counsel then filed a writ of prohibition in the court of appeals. Appellant's motion to stay the proceedings was denied by the trial court. On December 11, 2004, when the trial court attempted to continue with the trial, defense counsel refused to participate in the case. Both counsel were removed by the judge, and new counsel was appointed. On January 10, 2005, the

---

1. The grand jury also indicted appellant on one count each of theft, forgery, and uttering. However, because these counts arose out of appellant's theft and subsequent forgery of Zaida Rosa's checks approximately one month prior to the murders, they were severed and tried to the bench after the trial concluded. The trial court found appellant guilty on these remaining counts.

appeal was dismissed by this court because the denial of the motion was not a final, appealable order.

{¶ 4} On February 3, 2005, original counsel filed a motion to appear as pro bono counsel, which was granted. Newly appointed counsel withdrew. Counsel noted at the time of appearance that they had already exceeded the cap for their assigned-counsel fees. Counsel then litigated the case pro bono for five weeks and did not file an application for extraordinary fees.

{¶ 5} A jury trial began on April 4, 2005. Appellant waived a jury for the theft-related counts, 13, 14, and 15, and was found guilty on all three theft counts. On May 10, 2005, the jury found appellant guilty of counts one and three, aggravated murder, as charged. The jury also found appellant guilty of count two, aggravated murder, but not guilty of the felony-murder specifications. However, appellant was found guilty of the multiple-killing specification. The jury also found appellant guilty of the lesser included offense of murder in count four. The jury found appellant not guilty of two counts of aggravated robbery, counts six and eight, but guilty of the remaining counts of the indictment.

{¶ 6} A penalty-phase hearing was conducted for counts one through three. The jury recommended a sentence of life without parole for the merged counts one through four. The court also sentenced appellant to serve five years for counts five, seven, and nine through 12, all first-degree felonies. A one-year sentence was imposed for the theft offenses. All the nonhomicide sentences are being served concurrently with each other and the homicide offenses. The clerk of court docketed the journal entry on May 16, 2005.

{¶ 7} Cleveland police officer Eric Tammisaar found the bodies of Zaida Rosa, appellant's mother, and her sister-in-law, Angelica Nieves, in Zaida's home, victims of an apparent homicide. Both women had been stabbed repeatedly. The officer noted the locked doors and the lack of any evidence of a forced entry. The rooms in the house were intact, except Zaida's room, where the officer observed that the deadbolt lock had been forced open. A box of Zaida's personal checks was on the floor between the bed and dresser. Otherwise, the remaining items were in place; however, a photograph of Zaida's husband and appellant's father was face down on the entertainment center.

{¶ 8} After investigating further and speaking with other family members, the officer learned that appellant's father had committed suicide after he had been charged with raping his 11–year–old granddaughter and after the accusation from his daughter, Maribel Torres, that he had raped her when she was a child. The officer was told that appellant had resided with his mother until June 4, 2003, and that he had stolen her checks and written fraudulent checks to Wilson Bastita, totaling $10,000.

{¶ 9} Maribel informed the police that appellant had been calling her asking for money and that she last saw him on August 7, 2003. The last communication with Zaida was initiated by her son on August 10. Her body was found on August 13, 2003. Maribel told the police that appellant was angry with his mother and that he was very violent.

{¶ 10} Appellant was arrested, taken to the police station, and Mirandized. Ultimately, Detective Kovach interviewed him about the murders. He denied the murders and surmised that someone had broken into the house and killed the victims for money. The detective responded that no one would believe that a burglar would break into a house and then lock the doors upon leaving. Appellant than confessed to the detective, and his statement was reduced to writing. However, after the detective typed the statement, appellant refused to sign it until he communicated with his attorney.

{¶ 11} Appellant then appealed to this court in *State v. Torres*, Cuyahoga App. No. 86530, 2006-Ohio-3696, 2006 WL 2023578 (*Torres I*), arguing eight assignments of error. This court affirmed the lower court's conviction and remanded the case to the trial court for sentencing. This case is now on appeal a second time. This appeal involves alleged errors by the trial court in the payment and nonpayment of various expert expenses and attorney fees.

## II

{¶ 12} First assignment of error: "The trial court erred in failing to authorize payment of expenses incurred by the appellant after authorizing employment of experts."

{¶ 13} Second assignment of error: "The trial court abused its discretion by failing to hold a hearing to determine if fees and expenses were reasonable."

## III

{¶ 14} Because of the disposition of appellant's second assignment of error, we will address it first. Appellant argues in this assignment of error that the trial court abused its discretion by failing to hold a hearing to determine whether the fees and expenses approved by the trial court were reasonable.

{¶ 15} Abuse of discretion is the standard for reviewing the decision of the trial court in granting, setting, or denying a defendant's motion for funds to employ an expert witness. *State v. Peeples* (1994), 94 Ohio App.3d 34, 640 N.E.2d 208.

{¶ 16} R.C. 2929.024 states:

If the court determines that the defendant is indigent and that investigation services, experts, or other services are reasonably necessary for the proper representation of a defendant charged with aggravated murder at trial or at the sentencing hearing, *the court shall authorize the defendant's counsel to obtain the necessary services for the defendant, and shall order that payment of the fees and expenses for the necessary services be made in the same manner that payment for appointed counsel is made* pursuant to Chapter 120. of the Revised Code. If the court determines that the necessary services had to be obtained prior to court authorization for payment of the fees and expenses for the necessary services, the court may, after the services have been obtained, authorize the defendant's counsel to obtain the necessary services and order that payment of the fees and expenses for the necessary services be made as provided in this section.

{¶ 17} In the case at bar, the lower court summarily denied over $30,000 in fees to eight professionals. Following the trial, the lower court paid some expenses in full, paid a portion of other expenses, and denied payment of others. For example, the trial court allowed payment in the amount of only $5,000 on a $13,600 fee submitted by mitigation expert Lisa Roth. The trial court also reduced a $13,891.86 bill submitted by James John Karpawich, Ph.D., to $8,000.

{¶ 18} In another example, Robert C. Bux, M.D., submitted a bill for $4,827.11, and his bill was denied in its entirety, even though the trial judge had previously informed trial counsel that she would make the appointment.[2] Although the judge made the appointment, she neglected to sign a journal entry appointing Dr. Bux. However, the judge did sign a general docket entry assigning various experts, including Dr. Bux.

{¶ 19} When the trial judge denied Dr. Bux's fees on June 6, 2005, the journal entry simply stated the following: "Fees for Robert C. Bux, M.D., in the amount of ($4,827.11) are hereby denied, as defense attorneys filed a notice of appearance pro bono on 2/3/05." However, the evidence demonstrates that Dr. Bux was engaged in preparation for this trial well in advance of February 3, 2005, and the trial judge had already approved Dr. Bux as an expert.

{¶ 20} Also on June 6, 2005, the trial judge denied a witness's hotel expenses. The June 6 journal entry states the following: "Hotel expense for the amount of ($71.05) for a witness for the defense is hereby denied, as attorney[s] filed a notice of appearance of pro bono *on February 3, 2005.*" (Emphasis added.)

{¶ 21} The fact that the defense attorneys in this case filed a pro bono notice of appearance on February 3, 2005, does not, by extension, mean that all trial experts are also required to work pro bono from that day forward. It appears

---

2. Appellant's brief, 3.

that the lower court used February 3, 2005, as a separation point for many of the fees submitted, paying experts for services prior to this date and denying payment after this date.

{¶ 22} In addition to denying fees to Dr. Bux, the trial judge also reduced interpreter fees. On November 23, 2004, defense counsel filed a motion for the appointment of an interpreter, which was granted by the trial judge on December 1, 2004. In the motion, defense counsel requested that "the interpreter be paid at the rate of $50.00 per hour, which is less than the normal charges for an interpreter of $100.00 per hour." Accordingly, the lower court was aware of the interpreter's hourly rate when it approved it on December 1, 2004. To unilaterally reduce the interpreter's bill without explanation, as was done in the trial court's journal entry, is arbitrary and unreasonable.

{¶ 23} In addition to the reduction of interpreter fees, the trial judge also reduced the $13,891.86 bill submitted by Richard J. Ofshe, Ph.D., to $8,000. Moreover, Dennis Murphy, whom the trial judge assigned as the replacement investigator, was paid nothing, because the judge never signed a journal entry appointing him. Appellant's counsel states that the appointment was made in front of defense counsel and that investigator Murphy is owed $1,000.

{¶ 24} The law does not look favorably upon uncompensated indigent counsel having to pay, from their own resources, the costs and expense of litigation. In fact, payment of expenses is specifically prohibited by DR 5–103(b), since the client is indigent. *Disciplinary Counsel v. Shane* (1998), 81 Ohio St.3d 494, 692 N.E.2d 571.

{¶ 25} In *State v. Whitfield,* 167 Ohio App.3d 211, 2006-Ohio-3044, 854 N.E.2d 562, ¶ 21, the court held that it was an abuse of discretion to limit fees and fail to hold a hearing.

{¶ 26} *Whitfield* stated the following:

*As previously mentioned, the trial court did not conduct a hearing to evaluate whether Emmons's services as billed were reasonable and necessary.* More important, the trial court's rationale for reducing Emmons's fees by half is not supported in the record. The record is devoid of any hourly rate or cap of $7,500.00 on Emmons's fees. In its decision reducing Emmons's fees, the trial court states that 'the previously approved amount of seven thousand five hundred dollars ($7,500) is reasonable and appropriate compensation for the professional services provided in this case.' However, as stated there is no evidence in the record which demonstrates that the parties agreed that Emmons's fees were to be fixed at $7500.00. That amount cannot be found in the local rule, nor was it journalized at the time Emmons was appointed to Whitfield's case. Simply put, the record does not support the finding made by the trial court.

In light of the foregoing, we hold that the trial court erred when it arbitrarily reduced the amount of compensation Emmons requested from $15,497.67 to $7,500. While the trial court has broad discretion in determining the amount owed to Emmons for his services, *it was error for the court to make that determination without a hearing. Thus, this matter is remanded to the trial court for a hearing to be conducted on Emmons's motion for payment of professional services.* (Emphasis added.)

{¶ 27} The reduction of expert fee amounts was arbitrary and unreasonable. The lower court's decision to limit and deny certain expert expenses and attorney fees without a hearing was improper. Accordingly, we find that the lower court abused its discretion.

{¶ 28} The judgment is hereby reversed, and the cause is remanded to the lower court. A full hearing to determine reasonable fees and expenses to be paid by the court shall be held.

{¶ 29} Appellant's second assignment of error is sustained.

{¶ 30} Based on the disposition of appellant's second assignment of error, we find appellant's first assignment of error to be moot.

{¶ 31} It is ordered that appellant recover from appellee costs herein taxed.

{¶ 32} The court finds there were reasonable grounds for this appeal.

> Judgment reversed
> and cause remanded.

KILBANE and BLACKMON, JJ., concur.