**The STATE of Ohio, Appellee,**

v.

**OLIVER, Appellant.**

[Cite as *State v. Oliver* (1995), 101 Ohio App.3d 587.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 66646.

Decided March 6, 1995.

588

*David C. Sheldon,* Assistant Prosecuting Attorney, for appellee.

*Thomas R. Wetterer, Jr.,* Assistant Public Defender, for appellant.

---

NAHRA, Judge.

Defendant-appellant Lee Oliver appeals from his convictions for violations of R.C. 2925.03(A)(1) and (2), trafficking in drugs, and R.C. 2921.36, illegal conveyance of prohibited items into a detention facility. The evidence adduced by the state at appellant's trial revealed the following facts concerning the incidents which led to appellant's convictions.

In July 1993, Valerie Wallace was in the Cuyahoga County Jail at the Justice Center in downtown Cleveland. Since she was unable to obtain any herself, she

requested a "third party"[1] to arrange having some drugs, such as "some pills" or "heroin," brought to the jail for her. To pay for this transaction, Wallace gave $75 through the jail commissary to another "third party," ostensibly for "legal fees." After the arrangements had been made, Wallace knew appellant, an attorney at the time, would be coming to the jail to visit her on July 10. Wallace was not, however, a client of appellant's.

On July 10, appellant came to the jail's first floor visitation area and signed his name to a green card,[2] stating he was there to see Wallace. He was then permitted to proceed to the upstairs visitation room. Pursuant to jail procedure, Wallace was searched by a corrections officer before being permitted to meet with appellant. No drugs were found on Wallace's person or in her cell.

When Wallace came into the visitation room, appellant was sitting in a chair waiting for her. He then rose to shake her hand. As he did so, Wallace felt him pass her a packet. She held it in her hand as they spoke. During their short conversation, appellant told her to "[t]ry to make it last so he wouldn't have to come back as often." As she and appellant subsequently parted, Wallace slipped the packet into her mouth, aware that she would be searched again before being permitted to return to her cell. As she had calculated, the corrections officer neglected to look in Wallace's mouth.

Once back in her cell, Wallace opened the packet and tried some of the substance it contained by putting it on her finger and sniffing it. She then secreted the packet between two cups which she placed on a shelf.

Some time later, when Wallace did not respond to the call to eat, Corrections Officer ("C.O.") Estella Parks went to Wallace's cell. Parks found Wallace "in a daze." Her suspicions aroused by Wallace's appearance, Parks searched the cell and found the packet hidden between the cups. Subsequent analysis by the Ohio Bureau of Criminal Investigation revealed the substance in the packet to be heroin.

On July 26, 1993, appellant accompanied his former client Lydia Watford as she went to see her parole officer. Watford had requested appellant to be present at the meeting because she expected to be arrested for previously violating the conditions of her parole. Before they met with the parole officer, Watford, who was an addict, gave appellant "a couple of bags of heroin" to hold for her.

Events transpired as Watford had foreseen, so she was escorted to the police station for booking. Once the booking process was over but before Watford, now

---

1. Quoted text indicates trial testimony of the witness.

2. This color of card is specifically used for attorneys who wish to visit a jail inmate.

in her prison uniform, was taken to a cell, appellant returned the items she had given him.

On July 30, 1993, appellant came to the jail in the morning to see Watford concerning her case. Appellant returned in the afternoon. As before, Watford was searched prior to being permitted to visit with appellant. During the second meeting, appellant handed Watford a business card. Watford felt "something on the back." She placed it in the pocket of her prison uniform but kept her hand on it for a few seconds. This was enough to alert the C.O. watching the pair. Thus, when appellant had left but before being permitted to return to her cell, Watford was thoroughly searched. As a result of this search, the C.O. found seven small cellophane packets containing a white powder in Watford's pocket. Two similar packets were also discovered in Watford's socks; Watford had unsuccessfully transferred the packets there while taking off her uniform. The powder in the packets later tested positive for heroin. Watford testified each packet was worth about $25.

Appellant was subsequently arrested and indicted on six counts, three counts for each of the incidents. Counts one and three pertained to the July 10, 1993 incident, alleging violation of R.C. 2925.03(A)(1). Counts two and four pertained to the July 30, 1993 incident, alleging violation of R.C. 2925.03(A)(2). Counts five and six alleged violation of R.C. 2921.36 on both dates. Appellant pleaded not guilty to the charges at his arraignment. Appellant was also found indigent and the public defender's office was assigned as counsel.

The record reflects appellant's case was set for a trial on October 25, 1993. On that date, however, the prosecutor requested a short continuance. The trial court held a hearing on the matter and also considered several other issues that had been presented to it, including some motions filed by appellant *pro se*.

During the hearing, although appellant's counsel objected and stated he was fully prepared for trial, the trial court granted the prosecutor's motion for a continuance. However, the trial court also proceeded to do the following: (1) grant appellant's motion to act as his own co-counsel at trial in view of, as counsel noted, appellant's "particular expertise" as a former criminal defense attorney; (2) permit the withdrawal of appellant's motion for the appointment of an investigator since appellant had earlier been found indigent, and therefore, the resources of the public defender's office could be utilized if an investigator was needed; and (3) accept appellant's waiver of a jury trial.

Appellant's trial commenced on October 27, 1993. Following the presentation of the state's evidence, appellant's counsel made a motion for acquittal pursuant to Crim.R. 29. Counsel argued that even construing the evidence most strongly in favor of the state, appellant could be found guilty of, at most, only the last two

counts of the indictment. The trial court considered the motion and then overruled it.

The record reflects that upon consultation with his attorney, appellant then rested his case. Appellant's counsel thereafter waived presentation of a closing argument.

The trial court subsequently found appellant guilty of the charges. Prior to holding a sentencing hearing, the trial court requested the parties to submit memoranda concerning some of the points raised by appellant's counsel during his argument for acquittal.

Ultimately, the trial court sentenced appellant as follows: a two-year term of incarceration on each of counts one and three, the terms to run consecutively, and a one-year term of incarceration on each of the remaining counts, the terms to run concurrently. The trial court also suspended execution of sentence on count three, granted conditional probation on that count, gave appellant credit for time served and ordered the mandatory fine waived due to appellant's indigency.

Appellant filed a timely appeal from his conviction and presents four assignment of error for this court's review.

## I

Appellant's first assignment of error states:

"The trial court erred to the prejudice of the defendant by failing to inquire into whether the defendant knowingly and intelligently waived his right to testify."

Appellant asserts the trial court had an affirmative duty to determine on the record whether he "knowingly and intelligently waived his right to testify" at his trial. Appellant argues its failure to do so renders his conviction constitutionally voidable. This court does not agree.

Initially, this court is constrained to note the record clearly demonstrates that appellant was a practicing attorney at the time of his arrest. There is not the slightest indication that he was not knowledgeable or intelligent in his capacity as an attorney; rather, the indications are the opposite. It is impossible, therefore, to conceive that appellant was unaware of any implications concerning the invocation of his constitutional rights to compulsory process and against self-incrimination just two months later when his trial took place. Cf. *Hollenbeck v. Estelle* (C.A.5, 1982), 672 F.2d 451; *State v. Neuman* (1988), 179 W.Va. 580, 371 S.E.2d 77; *People v. Curtis* (Colo.1984), 681 P.2d 504. Moreover, appellant made no comments concerning any alleged deprivation of his constitutional rights during the trial. Cf. *Boyd v. United States* (D.C.App.1991), 586 A.2d 670.

Secondly, appellant cites no authority from this jurisdiction for his position. Instead, he cites several cases from state and federal courts outside Ohio for the proposition that an on-the-record inquiry *should* be required. Courts in Ohio, however, have taken a contrary view. See, *e.g., State v. Crosson* (Mar. 30, 1990), Delaware App. No. 89–CA–26, unreported, 1990 WL 41692; *State v. Morrison* (June 2, 1992), Franklin App. No. 91AP–1326, unreported, 1992 WL 125260; *Hayes v. Russell* (C.A.6, 1969), 405 F.2d 859.

It is also significant that in most of the cases appellant cites, the requirement of an on-the-record inquiry was to be conducted *out of the jury's hearing,* so that a defendant could consider the advantages or disadvantages of having his credibility tested before the fact-finder. There are obviously different considerations in imposing such a requirement when trial is to the bench, as appellant's was. Especially in view of appellant's expertise as an attorney and other circumstances of this case, this court is disinclined to impose as appellant demands a new obligation on the trial court when neither any other Ohio court nor the Ohio legislature has done so. Cf., *e.g.,* Crim.R. 11(C)(2); R.C. 2945.05.

For the foregoing reasons, appellant's first assignment of error lacks merit and is overruled.

## II

Appellant's second assignment of error states:

"The defendant's right to the effective assistance of counsel guaranteed under Article I, Sections 10 and 16 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution was violated by trial counsel's failure to make the adversarial testing process work in the trial court."

Appellant argues his trial counsel was ineffective because he failed to "adequately advocate" during his representation of appellant. Appellant points to several instances in the record which he claims illustrate counsel's deficient performance; however, this court does not share appellant's viewpoint.

The claim of ineffective assistance of counsel requires proof that "counsel's performance is proved to have fallen below an objective standard of reasonable representation" and, in addition, prejudice arises from counsel's performance. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus; see, also, *State v. Lytle* (1976), 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623. The establishment of prejudice requires proof "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley, supra,* paragraph three of the syllabus.

The burden is on defendant to prove ineffectiveness of counsel. *State v. Smith* (1985), 17 Ohio St.3d 98, 17 OBR 219, 477 N.E.2d 1128. Trial counsel is strongly presumed to have rendered adequate assistance. *Id.;* see, also, *Vaughn v. Maxwell* (1965), 2 Ohio St.2d 299, 31 O.O.2d 567, 209 N.E.2d 164. Moreover, this court will not second-guess what could be considered to be a matter of trial strategy. *Id.*

The record in this case with regard to trial counsel's actions fails to demonstrate that counsel's performance fell below an objective standard of reasonableness. Moreover, in considering this assignment of error, this court is mindful that appellant was permitted by the trial court to act as "co-counsel."

Appellant's initial assertion is that counsel failed to adequately prepare for trial, however, the indications are otherwise. Counsel's actions at the hearing on October 25, 1993, the date first set for trial, reveal he was fully prepared to proceed and took steps to protect both his client's rights and his client's resources.

Appellant next asserts counsel was an ineffective advocate during trial since he waived opening and closing argument, cross-examined only three of the prosecution witnesses, and failed to call any defense witnesses. However, these matters are all decisions left to counsel's discretion as ones within the ambit of trial strategy. *State v. Sandy* (1982), 6 Ohio App.3d 37, 6 OBR 147, 452 N.E.2d 515; *State v. Reese* (1982), 8 Ohio App.3d 202, 8 OBR 273, 456 N.E.2d 1253; *State v. Hunt* (1984), 20 Ohio App.3d 310, 20 OBR 411, 486 N.E.2d 108; *State v. Saah* (1990), 67 Ohio App.3d 86, 585 N.E.2d 999; *State v. Coulter* (1992), 75 Ohio App.3d 219, 598 N.E.2d 1324.

Finally, appellant finds fault with counsel's action in arguing for acquittal on only four of the six counts of the indictment. Viewing the case as a whole, however, it is clear that the evidence of appellant's guilt was overwhelming. Clearly, as appellant concedes, counsel determined that under the circumstances, the best strategy was to "present a technical defense that limited Appellant's potential maximum sentence." From a review of the complete record, this court cannot state that counsel's actions in this regard were either inappropriate or prejudicial. *State v. Smith* (1991), 75 Ohio App.3d 73, 598 N.E.2d 878; *State v. Bell* (1990), 70 Ohio App.3d 765, 592 N.E.2d 848.

As the court admonished in *State v. Hart* (1988), 57 Ohio App.3d 4, 566 N.E.2d 174, effective assistance of counsel does not guarantee favorable results. Moreover, a guilty verdict at trial without more does not guarantee that an appellant will prevail on appeal when he challenges the professional judgment and tactics of his trial attorney. *Id.*

Since appellant can demonstrate neither that trial counsel's actions fell below an objective standard of reasonable representation nor that he was prejudiced by trial counsel's actions, appellant has failed to support his claim he was denied his constitutional right to effective assistance of counsel.

Accordingly, appellant's second assignment of error is overruled.

### III

Appellant's third assignment of error states:

"The trial court erred in failing to acquit defendant-appellant of the offense of trafficking in drugs for the reason that a specific offense statute exists which covers the circumstances demonstrated by the evidence herein."

Appellant argues he was improperly charged and convicted of R.C. 2925.03(A)(2), trafficking in drugs, since he was also charged and convicted of the "more specific offense," R.C. 2921.36, illegal conveyance of prohibited items into a detention facility. Appellant relies on *State v. Volpe* (1988), 38 Ohio St.3d 191, 527 N.E.2d 818, and *State v. Chippendale* (1990), 52 Ohio St.3d 118, 556 N.E.2d 1134, in support of his argument.

In *Chippendale, supra,* at 120, 556 N.E.2d at 1136–1137, the court stated as follows:

"It is a well-established principle of statutory construction that specific statutory provisions prevail over conflicting general statutes. *Volpe, supra,* at 193, 527 N.E.2d at 820. In recognition of this principle, the General Assembly enacted R.C. 1.51, which deals with the proper application of general and special or local provisions, and reads:

" 'If a general provision conflicts with a special or local provision, *they shall be construed, if possible, so that effect is given to both.* If the conflict between the provisions is *irreconcilable,* the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail.'

" * * *

"[I]f one of the statutes is general and one specific and they involve the same or similar offenses, we must then ask whether the offenses constitute allied offenses of similar import. To be allied offenses, ' * * * *the elements of the offenses [must] correspond to such a degree that the commission of one crime will result in the commission of the other * * *.*' *Newark v. Vazirani* (1990), 48 Ohio St.3d 81, 549 N.E.2d 520, syllabus.

" * * *

"To summarize, *R.C. 1.51 comes into play only when a general and a special provision constitute allied offenses of similar import* and additionally do not constitute crimes committed separately or with a separate animus for each crime." (Emphasis added.)

Appellant was charged with violations of R.C. 2925.03(A)(2) and 2921.36(A)(2). Those statutes are set forth below:

R.C. 2925.03:

"(A) No person shall knowingly do any of the following:

" * * *

"(2) *Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute* a controlled substance, *when* the offender knows or has reasonable cause to believe the controlled substance is *intended for sale or resale by the offender or another*." (Emphasis added.)

R.C. 2921.36:

"(A) No person shall knowingly convey, or attempt to convey, onto the grounds of a detention facility * * * any of the following items:

" * * *

"(2) Any drug of abuse * * *."

 A comparison of the elements of these two crimes reveals they do not correspond; therefore, they are not allied offenses. R.C. 2925.03(A)(2) contains additional elements, *viz.*, preparing the item and transportation of the item with knowledge it is intended for sale or resale.

Furthermore, the commission of one of these crimes does not necessarily result in the commission of the other. *State v. Blankenship* (1988), 38 Ohio St.3d 116, 526 N.E.2d 816. When a person conveys a drug into a detention facility, drug trafficking as defined in R.C. 2925.03(A)(2) does not automatically occur; rather, the state is required to prove at least one additional element. As the court observed in *State v. Cooper* (1990), 66 Ohio App.3d 551, 585 N.E.2d 868, "[a]cts committed under the latter statute do not always violate the former statute." The statutes can be reconciled; "therefore, the R.C. 1.51 interpretation rule does not apply." *Id.*

Thus, the trial court did not err in denying appellant's motion for acquittal with regard to the charges of violation of R.C. 2925.03(A)(2) and 2921.36. Accordingly, appellant's third assignment of error is also overruled.

## IV

Appellant's fourth assignment of error states:

"The trial court erred by sentencing appellant for trafficking in drugs and conveyance of prohibited items, allied offenses of similar import, thereby denying appellant his right against double jeopardy as protected by Article I, Section 10 of the Ohio Constitution and the Fifth Amendment to the United States Constitution."

As revealed by his "issue presented for review," [3] appellant argues that since there were only two incidents leading to the charges against him, the imposition of a sentence on each of the six counts violated R.C. 2941.25(A) and his constitutional rights. The state has not opposed appellant's argument in either its appellate brief or oral argument to this court. Under the circumstances of this case, appellant's argument is persuasive.

R.C. 2941.25(A) states:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one."

The court stated the following in *State v. Torres* (1986), 31 Ohio App.3d 118, 119–120, 31 OBR 204, 205–206, 508 N.E.2d 970, 972:

"The Double Jeopardy Clauses of both the United States and Ohio Constitutions offer protection for a defendant against * * * multiple punishments for the same offense. *North Carolina v. Pearce* (1969), 395 U.S. 711, 717 [89 S.Ct. 2072, 2076–2077, 23 L.Ed.2d 656, 664–665]. The principles of the Double Jeopardy Clauses are effectuated in Ohio through R.C. 2941.25. *State v. Thomas* (1980), 61 Ohio St.2d 254, 259–260, 15 O.O.3d 262, 265–266, 400 N.E.2d 897, 902, certiorari denied (1980), 449 U.S. 852 [101 S.Ct. 143, 66 L.Ed.2d 64].

"When the elements of two offenses are so similar that *proof of the same facts will satisfy the requirements of both,* then they are in essence the same offense. * * *

"The test to be applied in construing statutory provisions was enunciated by the United States Supreme Court in *Blockburger v. United States* (1932), 284 U.S. 299 [52 S.Ct. 180, 76 L.Ed. 306]:

" ' * * * The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, *the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. * * *'* " (Emphasis added.)

---

3. In his appellate brief, appellant frames the issue thus: "Does the single act of conveyance of a packet of heroin to a jail inmate constitute sufficient proof for a violation of R.C. 2921.36, R.C. 2925.03(A)(1), and 2925.03(A)(2)?"

Thus, when considering an argument such as appellant's herein, the elements of the offenses must not be viewed abstractly, but, instead, should be viewed with reference to the facts of the particular case. *Newark v. Vazirani* (1990), 48 Ohio St.3d 81, 83, 549 N.E.2d 520, 521–522; see, also, *Dayton v. McLaughlin* (1988), 50 Ohio App.3d 69, 552 N.E.2d 965.

As stated previously, in the context of this case, R.C. 2925.03(A)(2) and 2921.36 are not allied offenses. R.C. 2925.03(A)(1), however, contains the following elements:

"(A) No person shall knowingly do any of the following:

"(1) Sell or offer to sell a controlled substance in an amount less than the minimum bulk amount[.]"

When this statute is compared with R.C. 2921.36 and applied to the facts of this case, it is clear the sale was "merely incidental" to the conveyance and appellant's commission of one crime resulted in his commission of the other. *State v. McGhee* (1987), 37 Ohio App.3d 54, 523 N.E.2d 864; *Newark v. Vazirani, supra.* The sales did not take place until appellant conveyed the drugs into the jail for Wallace and Watford; therefore, the same facts proved violation of both R.C. 2925.03(A)(1) and 2921.36. *State v. Roberts* (1980), 62 Ohio St.2d 170, 16 O.O.3d 201, 405 N.E.2d 247; *State v. Jennings* (1987), 42 Ohio App.3d 179, 537 N.E.2d 685; *State v. McGhee, supra; State v. McCool* (1988), 46 Ohio App.3d 1, 544 N.E.2d 933; cf. *State v. Hankins* (1993), 89 Ohio App.3d 567, 626 N.E.2d 965; *State v. Jordan* (1992), 73 Ohio App.3d 524, 597 N.E.2d 1165.

Moreover, appellant had only a single animus on each occasion with respect to these two crimes. Under these circumstances, the trial court should have merged the conviction for these two offenses pursuant to R.C. 2941.25(A). Its failure to do so was thus error.

Accordingly, appellant's fourth assignment of error is sustained.

Appellant's convictions and sentences for violation of R.C. 2925.03(A)(1) are reversed. Appellant's other convictions and sentences are affirmed. This cause is remanded for resentencing in accordance with this opinion.

*Judgment accordingly.*

James D. Sweeney, P.J., and Harper, J., concur.