JOURNAL ENTRY AND OPINION
{¶ 1} Defendant, Eric Peyton, appeals his jury trial conviction for aggravated robbery in violation of R.C. 2911.01, a first degree felony, and having a weapon while under disability in violation of R.C. 2923.13, a third degree felony. He also appeals his sentence of thirteen years on count one and five years on count two, to run concurrently with each other, but consecutive to his sentence in two other cases.[1]
Defendant represented himself at trial.
 {¶ 2} At 10:00 P.M. on a spring evening, the victim stopped at a gas station convenient store on the east side of Cleveland. While the victim was in the store, a male whom he identified as defendant robbed him at gun point and shot him. The bullet passed through both legs.
 {¶ 3} The video camera in the store showed defendant robbing the victim, and the police identified defendant from that video. They then showed the victim a photo array, from which he identified defendant.
 {¶ 4} The victim was treated for the gun shot wound at the hospital, where a nurse recovered the bullet from his pant leg and gave the bullet to the police.
 {¶ 5} When the police arrested defendant, defendant was holding a gun that matched the description of the gun used in the robbery. After test firing the gun, they determined that the bullet recovered in the robbery matched the bullet test-fired from the gun taken from defendant.
 {¶ 6} In his appeal, defendant states four assignments of error, of which the first is:
I. THE TRIAL COURT ERRED IN DENYING APPELLANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL WHEN THERE WAS INSUFFICIENT EVIDENCE TO PROVE THE ELEMENTS OF AGGRAVATED ROBBERY.
 {¶ 7} The only issue defendant raises under this assignment of error is the victim's identification of him as the robber. He argues that the identification was not reliable for three reasons: the victim's description to the police differed from defendant's actual appearance, a witness who had seen another man enter the convenient store stated that defendant was not the man in the store at the time of the robbery, and the store clerk could not identify him.
 {¶ 8} When a court reviews a record for sufficiency, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 9} In the case at bar, defendant complains not about the fairness of the photo array, but only about the discrepancy between the victim's description to the police and defendant's actual appearance. Despite the inaccurate description the victim gave at the time of the robbery, the victim was able to pick the defendant from a photo array. Further, the police themselves were able to identify defendant from the videotape of the robbery. Although evidence existed to contradict this evidence, under the sufficiency standard, the state needs only to present enough evidence that, if believed, would support a conviction. Viewed from that perspective, these identifications are sufficient to support a conviction. Accordingly, the conviction was sufficient to support the verdict.
 {¶ 10} For his second assignment of error, defendant states:
THE APPELLANT'S CONVICTIONS FOR AGGRAVATED ROBBERY IS [sic] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 11} Defendant also argues that this conviction is against the manifest weight of the evidence. Under this assignment of error, defendant again relies on the alleged misidentification of him as the robber.
 {¶ 12} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2D 541, 545-546. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `"`thirteenth juror'"' and disagrees with the fact finder's resolution of the conflicting testimony." Id., citing Tibbs v. Florida (1982), 457 U.S. 31, at 42. In a challenge to the manifest weight of the evidence, a court reviews the record, "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflict in the evidence, the jury clearly lost its way * * *." Thompkins, 387.
 {¶ 13} This court further "delineated the following factors as guidelines or considerations" for a reviewing court "to take into account when weighing the evidence":
1. Knowledge that even a reviewing Court of Appeals is not required to accept as true the incredible. * * *
2. Whether evidence is uncontradicted, * * *
3. Whether a witness was impeached, * * *
4. Consideration of what was not proved, * * *
5. The certainty of the evidence, * * *
6. The reliability of the evidence, * * *
7. The extent to which any of the witnesses may have an interest to advance or protect by their testimony, * * *
8. The extent to which the evidence is vague, uncertain, conflicting, fragmentary, or not fitting together in a [logical] pattern[.] * * * Internal citations omitted.
State v. Mattison (1985), 23 Ohio App.3d 10, 14, citing Statev. Gaston (Jan. 11, 1979), Cuyahoga App. No. 37846.
 {¶ 14} In the case at bar, the identification was contradicted by defendant's witness, who claimed he saw another man, not defendant, enter the convenient store just before he heard the gunshot. Defendant also relied on the difference between the victim's description of him and his actual appearance, as well as the store clerk's inability to identify him.
 {¶ 15} The evidence in favor of conviction, however, weighs more strongly than that against conviction. That the victim could pick defendant out of a photo array, along with the fact that the police were able to identify defendant from the videotape, weighs more heavily than the testimony of a witness who was not in the store at the time of the robbery and that of a clerk who could not identify the robber. Further, the jury viewed the videotape of the robbery and was able to judge for itself the resemblance between the robber in the videotape and the defendant in the court room.
 {¶ 16} Accordingly, the conviction is not against the manifest weight of the evidence.
 {¶ 17} For his third assignment of error, defendant states: III. THE TRIAL COURT ERRED IN ADMITTING OTHER ACTS EVIDENCE AGAINST APPELLANT.
 {¶ 18} Defendant argues that he was unduly prejudiced when the court allowed the jury to hear evidence that he used a gun during the robbery.
 {¶ 19} Defendant was not indicted for shooting the victim during the robbery. The trial court, therefore, granted his motion to suppress evidence of the shooting, because a shooting is not an element of the crime of aggravated robbery and would be inadmissible, as evidence of his character, under Evid.R. 404, which states:
(A) Character evidence generally. — Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions:
(1) Character of accused. Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same is admissible; however, in prosecutions for rape, gross sexual imposition, and prostitution, the exceptions provided by statute enacted by the General Assembly are applicable.
* * *
(B) Other crimes, wrongs or acts. — Evidence of the other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes,such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. (Emphasis added.)
 {¶ 20} Defendant put the question of the correct identification of the robber at issue. He also extensively questioned the victim about his description of the gun the robber used. In the process of this questioning, defendant also elicited testimony concerning the shooting, which testimony the court initially allowed to be stricken.
 {¶ 21} During defendant's cross-examination, the victim testified that he remembered the defendant's gun as having a ten-to-twelve inch barrel. The weapon admitted into evidence and as seen on the videotape had a much shorter barrel. At this point, the state asked the court to reconsider its ruling barring testimony that showed a ballistic match between the gun taken from defendant and the bullet taken from the victim's pant leg. The court permitted the testimony of the ballistics officer because, as the court explained: "[i]f I say I saw a person with a ten-inch barrel * * *, but now the T.V. shows that it's * * * only a three-inch barrel, two-and-a-half-inch barrel, that would put doubt to my information." Tr. 248. Because the previously excluded evidence served to prove that the weapon taken from defendant at his arrest and the weapon used in the robbery were one and the same, and defendant had elicited testimony to put that in doubt, the court allowed the evidence to come in.
 {¶ 22} Defendant also tried to prove that the gun taken from him at the time of his arrest was not really his gun. When questioning the arresting detective, defendant asked the detective whether fingerprints had been taken from the gun and if not, why not. The detective replied that he did not need to fingerprint the gun because he was holding a gun when the detective first approached him in the car and defendant's "fingers were wrapped around it." Tr. at 273.
 {¶ 23} Because defendant himself put the identity of the gun at issue, the trial court did not err in permitting rebuttal testimony into evidence on that issue. Accordingly, this assignment of error is overruled.
 {¶ 24} For his fourth assignment of error, defendant states:
IV. THE TRIAL COURT ERRED IN IMPOSING THE MAXIMUM CONSECUTIVE SENTENCES IN CASE NO. 453483.
 {¶ 25} Defendant argues that the trial court failed to comply with the statutory requirements of R.C. 2929.14 and 2929.19 when it imposed the maximum sentence for the crime in the case at bar and made that sentence consecutive to the sentence in his other two cases. In State v. Foster, the Ohio Supreme Court found that the portions of those statutes governing the imposition of consecutive and maximum sentences violated the United States Supreme Court's ruling in Blakely v. Washington (2004),542 U.S. 296 and therefore were unconstitutional.
 {¶ 26} In Foster, the Supreme Court held that several provisions of S.B. 2, including R.C. 2929.14(C), which governs the imposition of maximum sentences, and R.C. 2929.14(E), which governs the imposition of consecutive sentences, violateBlakely. Specifically as it pertains to R.C. 2929.14(C), the Court held: "Because R.C. 2929.14(B) and (C) and 2929.19(B)(2) require judicial fact finding before imposition of a sentence greater than the maximum term authorized by a jury verdict or admission of the defendant, they are unconstitutional. Because R.C. 2929.14(E)(4) and 2929.41(A) require judicial finding of facts not proven to a jury beyond a reasonable doubt or admitted by the defendant before imposition of consecutive sentences, they are unconstitutional." Id. ¶ 83. The Court severed these portions from the sentencing statutes based on its finding that Blakely
rendered them unconstitutional.
 {¶ 27} As a result, the trial court is no longer obligated to give reasons or findings prior to imposing consecutive and/or maximum sentences. The Court held that:
[Cases] pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent with this opinion. * * *
Under R.C. 2929.19 as it stands without (B)(2), the defendants are entitled to a new sentencing hearing although the parties may stipulate to the sentencing court acting on the record before it. Courts shall consider those portions of the sentencing code that are unaffected by today's decision and impose any sentence within the appropriate felony range. If an offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively. While the defendants may argue for reductions in their sentences, nothing prevents the state from seeking greater penalties. United States v.DiFrancesco (1980), 449 U.S. 117, 134-136, 101 S.Ct. 426,66 L.Ed.2d 328.
Foster ¶¶ 104-105.
 {¶ 28} In accordance with Foster, therefore, we reverse and remand for a new sentencing hearing. We note, however, the Ohio Supreme Court's clarification in State v. Mathis (2006),109 Ohio St.3d 54:
Although after Foster, the trial court is no longer compelled to make findings and give reasons at the sentencing hearing since R.C. 2929.19(B)(2) has been excised, nevertheless, in exercising its discretion the court must carefully consider the statutes that apply to every felony case. Those include R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender. In addition, the sentencing court must be guided by statutes that are specific to the case itself.
Id., ¶ 38.
 {¶ 29} The conviction is affirmed, the sentence is vacated, and the case is remanded for resentencing.
It is ordered that appellee and appellant split the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., and Kilbane, J., concur.
[1] Defendant was also convicted in Case Nos. 453481 453482, which are the subject of a separate appeal.