JOURNAL ENTRY AND OPINION
{¶ 1} In State v. Burnett, Cuyahoga County Court of Common Pleas Case No. CR-465425, applicant, Levon Burnett, was convicted of: murder; aggravated robbery; kidnapping; aggravated burglary; tampering with evidence; and obstructing justice. This court affirmed that judgment inState v. Burnett, Cuyahoga App. No. 87506, 2007-Ohio-284. Burnett did not appeal to the Supreme Court of Ohio.
 {¶ 2} Burnett has filed with the clerk of this court an application for reopening. He asserts that he was denied the effective assistance of appellate counsel because his counsel on direct appeal did not assign as error: the introduction of hearsay evidence; prosecutorial misconduct; the trial court's failure to advise him of *Page 3 
his right to testify; and the ineffectiveness of trial counsel. We deny the application for reopening. As required by App.R. 26(B)(6), the reasons for our denial follow.
 {¶ 3} Initially, we note that App.R. 26(B)(1) provides, in part: "An application for reopening shall be filed * * * within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time." App.R. 26(B)(2)(b) requires that an application for reopening include "a showing of good cause for untimely filing if the application is filed more than ninety days after journalization of the appellate judgment."
 {¶ 4} Applicant observes that "[t]his court affirmed the convictions on February 20, 2007 (CA 87506)." Application at 2. This observation, however, relies on the date on which the clerk issued a certified copy of the journal entry and opinion in Burnett's direct appeal to the criminal division of the court of common pleas. The docket for Case No. 87506 clearly reflects that this court announced its decision in Burnett's direct appeal on January 25, 2007 and that this court affirmed the judgment on February 5, 2007 indicating a volume and page number of the journalization of the judgment. See App.R. 22 and Loc.App.R. 22. As a consequence, the time for filing the application for reopening began to run on February 5, 2007. The application was filed on May 14, 2007, 98 days after journalization of the judgment in Burnett's direct appeal and clearly in excess of the ninety-day limit. Compare: State v.Agosto, Cuyahoga App. No. 87283, 2006-Ohio-5011, reopening disallowed,2007-Ohio-848 (91 days); State v. Peyton, Cuyahoga *Page 4 
App. No. 86797, 2006-Ohio-3951, reopening disallowed, 2007-Ohio-263 (93 days); State v. Lowe, Cuyahoga App. No. 82997, 2004-Ohio-4622, reopening disallowed, 2005-Ohio-5986 (91 days). Cf. State v. Woodard (Apr. 23, 1992), Cuyahoga App. No. 61171, reopening disallowed (Sept. 18, 2001), Motion No. 23121 (91 days after appointment of counsel).
 {¶ 5} The Supreme Court has upheld judgments denying applications for reopening solely on the basis that the application was not timely filed and the applicant failed to show "good cause for filing at a later time." App.R. 26(B)(1). See, e.g., State v. Gumm, 103 Ohio St.3d 162,2004-Ohio-4755, 814 N.E.2d 861; State v. LaMar, 102 Ohio St.3d 467,2004-Ohio-3976, 812 N.E.2d 970. We need not, therefore, examine the merits of this application if Burnett failed to demonstrate good cause for failing to file a timely application.
 {¶ 6} It is evident that applicant believed that the application was timely. As a consequence, applicant has made no attempt to demonstrate good cause for the delay in filing the application. The failure to demonstrate good cause is a sufficient basis for denying the application. See, e.g., State v. Torres, Cuyahoga App. No. 86530,2006-Ohio-3696, reopening disallowed, 2007-Ohio-9. See also: State v.Collier (June 11, 1987), Cuyahoga App. No. 51993, reopening disallowed2005-Ohio-5797, Motion No. 370333; State v. Garcia (July 8, 1999), Cuyahoga App. No. 74427, reopening disallowed 2005-Ohio-5796, Motion No. 370916. As a consequence, applicant has not met the standard for reopening. *Page 5 
 {¶ 7} We also deny the application on the merits, although — as the discussion above demonstrates — we are not required to review this application on the merits. Having reviewed the arguments set forth in the application for reopening in light of the record, we hold that Burnett has failed to meet his burden to demonstrate that "there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." App.R. 26(B)(5). In State v.Spivey (1998), 84 Ohio St.3d 24, 1998-Ohio-704, 701 N.E.2d 696, the Supreme Court specified the proof required of an applicant.
 {¶ 8} "In State v. Reed (1996), 74 Ohio St.3d 534, 535,660 N.E.2d 456, 458, we held that the two prong analysis found in Strickland v.Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, is the appropriate standard to assess a defense request for reopening under App.R. 26(B)(5). [Applicant] must prove that his counsel were deficient for failing to raise the issues he now presents, as well as showing that had he presented those claims on appeal, there was a `reasonable probability' that he would have been successful. Thus [applicant] bears the burden of establishing that there was a `genuine issue' as to whether he has a `colorable claim' of ineffective assistance of counsel on appeal." Id. at 25. Burnett cannot satisfy either prong of theStrickland test. We must, therefore, deny the application on the merits.
 {¶ 9} On direct appeal this court rejected Burnett's sole assignment of error that the verdict was against the manifest weight of the evidence. "Contrary to *Page 6 
defendant's assertions, there is ample evidence in the record that he aided and abetted Mike and Olyn Santos in the commission of the robbery that resulted in the murder of Harry Gonzalez. Defendant suggested the victim as a robbery target; described the possible location of the cash in the victim's house; and supplied the Santos cousins with the knives they used in perpetrating the crimes. Moreover, defendant waited in the car knowing that the Santos were entering the victim's house with the purpose of robbing him. Defendant did not leave the scene or abandon the robbery plot and he did not report the impending robbery to the authorities. Although defendant indicated a desire to leave the scene upon learning of Mike Santos' actions, he did not do so, and instead waited for Mike to get back into the car before driving away. Even though defendant claims he stayed with the group for fear of what Mike would do to him, the evidence shows that he fled to New York with Olyn even after Mike split off from the group. Defendant also disposed of one of the knives after the crimes were committed and he, along with Olyn, abandoned the getaway car in New York. The jurors properly weighed the evidence and obviously deliberated over the charges as reflected by the not guilty verdict on the charge of aggravated murder. Apparently, the jurors concluded on the evidence that defendant did not specifically intend to murder Harry Gonzalez. Instead, the jurors found defendant culpable under the felony murder statute, which provides: `No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second *Page 7 
degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.' The murder of Harry Gonzalez was the proximate result of the plot to attempt to rob him and burglarize his home.
 {¶ 10} "Defendant was not merely present at the scene. As set forth above, he actively participated in planning and preparing to commit the crime, waited in the car during its commission, and remained with the principal offenders for a significant period of time after the crimes were committed, during which time he participated in the disposal of instruments utilized in the commission of the offenses, i.e., knife and car." State v. Burnett, Cuyahoga App. No. 87506, 2007-Ohio-284, atPara 28-29.
 {¶ 11} During trial, Esmeralda Torres, Mike Santos' sister, testified — over objection — that various people gathered at her mother's house at three in the morning because "something happened" involving her brother Mike, Olyn and "Nuke" — a name by which Burnett is known. In his first proposed assignment of error in the application for reopening, Burnett contends that Torres' testimony is hearsay and the trial court's permitting that testimony denied Burnett the opportunity to confront the witnesses against him. The state persuasively argues that the record is not clear whether Torres' testimony includes a "statement * * * offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Additionally, in light of the evidence against Burnett quoted above, we cannot conclude that Burnett was prejudiced by the failure of appellate counsel to present this proposed assignment of error on direct appeal. *Page 8 
 {¶ 12} The prosecutor also twice asked a detective who was present when Burnett made a statement before the grand jury whether Burnett was "indicted minutes later"? Between these two questions, trial counsel objected, the court indicated that the court would be recessing for lunch and the court spoke with counsel at the sidebar. After the second time the prosecutor asked the question, the trial court stated: "If the — let's not go there." Then the court recessed.
 {¶ 13} Burnett contends that this sequence constituted prosecutorial misconduct. Again, we must conclude that — in light of the evidence — the failure to assign this error did not prejudice Burnett.
 {¶ 14} In his third proposed assignment of error, Burnett contends that the trial court failed to ensure that he made a knowing, intelligent and voluntary waiver of his right to testify. Yet, as the state observes, in State v. Oliver (1995), 110 Ohio App.3d 587, 592-93,656 N.E.2d 348 [Eighth Dist.], this court overruled an assignment of error asserting that the defendant was prejudiced by the failure of the trial court to inquire whether the defendant knowingly or intelligently waived his right to testify. We cannot conclude, therefore, that appellate counsel was deficient or that Burnett was prejudiced by the absence of this proposed assignment of error in his direct appeal.
 {¶ 15} In Burnett's fourth and final proposed assignment of error, he asserts that trial counsel was ineffective. Burnett argues that trial counsel should have objected to the testimony of a detective describing the crime scene as "a *Page 9 
slaughterhouse, it was horrible * * *. I didn't want to look at those photos earlier." Tr. at 226. Yet, as the state observes, on direct appeal, one of Burnett's reasons for contending that the judgment of the trial court was against the manifest weight of the evidence was that "he believes the jurors were influenced by the crime scene photos * * *." Id. at Tf19. Obviously, this court rejected Burnett's contention that the gruesome nature of this crime unduly influenced the jury's judgment. In light of the other evidence against Burnett, we cannot conclude that he was prejudiced by the detective's testimony.
 {¶ 16} Burnett also argues that his trial counsel was ineffective because, despite having presented a defense that Burnett was not involved at all in the planning of the robbery and what followed, trial counsel indicated during closing argument that Burnett stated before the incident: "I ain't going. * * *. I don't want to go in. I don't want any part of it." Tr. at 1146. Burnett contends that trial counsel was trying to establish the defense of abandonment or termination, but the evidence did not support the defense. "The Supreme Court of Ohio has consistently held that debatable trial tactics and strategies do not constitute a denial of effective assistance of counsel. State v. Clayton (1980), 62 Ohio St.2d 45, 402 N.E.2d 1189. [Trial counsel's decision] * * * is a matter of trial tactics and strategy which this court will not second-guess. Strickland, supra, at 2065." State v. Jones, Cuyahoga App. No. 83852, 2005-Ohio-1494, at 8. Similarly, we will not second-guess trial counsel's decision in this case. Considerable evidence was introduced against Burnett during *Page 10 
trial. Merely having the benefit of hindsight does not establish a genuine issue as to whether an applicant has a colorable claim of ineffectiveness of appellate counsel. Rather, we must conclude that Burnett has not demonstrated either that appellate counsel was deficient or that Burnett was prejudiced by the absence of this assignment of error.
 {¶ 17} Accordingly, the application for reopening is denied.
 FRANK D. CELEBREZZE, JR., A.J., and MARY EILEEN KILBANE, J., CONCURS *Page 1